IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal Action No. 3:19-CR-0142-N |
| | § | |
| TERREL JAMAL ROSE (1) | § | |
| | § | |

# MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Terrel Jamal Rose's motion to suppress [25]. For the following reasons, the Court grants in part and denies in part Rose's motion.

## I. FACTS LEADING TO ROSE'S ARREST

Prior to Rose's arrest, a 911 dispatcher received an anonymous call reporting an ongoing robbery at D & D Discount Liquor on South Lamar. The caller stated that an African American male pulled a gun on another man, both of whom were sitting in a white Crown Vic parked outside D & D Discount Liquor. The caller indicated that the car was parked on the side of the store by the trash can, and the man in the car had a black gun with a long clip. The caller stated that he thought the man with the gun was robbing the other man, and he was concerned that the man with the gun was dangerous. The caller reported that the man was wearing red pants, white and gold Jordans, and a black hoodie. The dispatcher asked if he would provide his name, but the caller chose to remain anonymous.

Dallas Police Officer Kalash reported to the scene after receiving the dispatch call. The dispatcher relayed to Officer Kalash that an armed disturbance in a vehicle was reported outside of D & D Discount Liquor. Upon arrival, Officer Kalash found Rose

wearing red pants, white and gold Jordans, and a light gray hoodie. He was standing behind a dumpster. As Officer Kalash approached Rose, Officer Kalash called for Rose to step out from behind the dumpster, and Officer Kalash immediately patted him down and asked Rose to sit down. Then, Officer Kalash walked behind the dumpster where he found a plastic bag hanging on a fence pole next to the dumpster. Officer Kalash opened the plastic bag and found a black gun with a long clip inside the bag.

Officer Kalash and three other officers kept Rose detained while they asked Rose questions and took photos of his tattoos. The officers asked Rose if the white Crown Vic was his vehicle, and he said it was. Then, they asked if they could search the vehicle, and Rose said yes. During the search of the vehicle, the officers found marijuana in the car. The officers discovered that Rose had an outstanding warrant, so the officers placed Rose under arrest. After the arrest, the officers performed a more extensive search of Rose's person and discovered a bottle of pills. The officers inquired about the pills, placed Rose in the squad car, and took him to jail for booking. While in the police car, the officers asked Rose questions in order to complete a booking form.

Rose moves to suppress all evidence collected during the stop and search of his person and vehicle, the firearm, the arrest, and all statements made during the course of the encounter.

## II. FOURTH AMENDMENT LEGAL STANDARD

The Fourth Amendment protects people from unreasonable searches and seizures. U.S. CONST. amend. IV. When evidence is obtained through an illegal search and seizure, a criminal defendant can seek to exclude the evidence. *United States v. Calandra*, 414

U.S. 338, 347 (1974). In order to have standing to challenge a search, a person must have a legitimate expectation of privacy in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

### A. Legal Standard for a *Terry* Stop

While people cannot be subject to an unreasonable search or seizure, officers can briefly detain pedestrians and motorists without probable cause when the officers have reasonable suspicion to believe that criminal activity is afoot. *United States v. Baker*, 47 F.3d 691, 693 (5th Cir. 1995). An officer can also frisk a suspect when the officer fears that the suspect is armed and poses a danger to the officer or others. *Id.*

Reasonable suspicion must be based on specific and articulable facts, not just an inarticulate hunch of wrongdoing. *Terry v. Ohio*, 392 U.S. 1, 21–22, 27 (1968). When evaluating whether the tip provided reasonable suspicion, the Court should look to:

> the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.

*United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007). Reliability can be tested when a tipster provides predictive information that allows officers to confirm the information with future acts of the suspect. *See id.* at 863; *see also Florida v. J.L.*, 529 U.S. 266, 271 (2000). Additionally, use of the 911 emergency system can be an indicator of veracity, especially because of the system's ability to trace and record calls. *Navarette v. California*, 572 U.S. 393, 400–01 (2014).

Officers can rely on an anonymous tip to investigate a suspect for criminal activity, but the tip must be reliable in its assertion of the of illegality. *J.L.*, 529 U.S. at 272. "If a tip is provided by an anonymous informant, such that the informant's credibility and reliability cannot be determined, the Government must establish reasonable suspicion based on the remaining factors." *United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010).

### B. Legal Standard for Abandoned Evidence

It is established that a person has a Fourth Amendment right to items or places in which he has a reasonable expectation of privacy. *United States v. Jones*, 565 U.S. 400, 406 (2012). However, "[a] defendant who abandons or disclaims ownership of property *prior to the search* does not have standing to challenge a search subsequent to his abandonment or disclaimer of that property." *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014) (emphasis in original). "[A]bandonment must be voluntary and not influenced by improper police conduct." *United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir. 1993). But "[t]he legal presence of the police for investigatory purposes or pursuit does not render an abandonment involuntary." *Id.*

### C. Legal Standard for the Exclusionary Rule

The exclusionary rule "requires trial courts to exclude unlawfully seized evidence in a criminal trial." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). The exclusionary rule covers both primary evidence obtained during an illegal search or seizure and "evidence later discovered and found to be derivative of an illegality," known as the fruit of the poisonous tree. *Id.* (internal quotations and citations omitted). In order to determine

whether the later obtained evidence is derived from the illegality, the Court should consider the following factors: (1) the temporal proximity between the unconstitutional conduct and the discovery of the evidence; (2) any intervening circumstances; and (3) the purpose and flagrancy of the action. *See id.* at 2062–63.

However, courts recognize three exceptions to the exclusionary rule. *See United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001). "Otherwise suppressible testimony or evidence should be admitted if it derives from an independent source, if the link to the illegally secured evidence is attenuated, or if it would inevitably have been discovered without the aid of the illegally obtained evidence." *Id.* In order to admit evidence under the inevitable discovery exception, "there must have been a reasonable probability that the evidence would have been discovered from an untainted source." *Id.* More specifically, the government must show "both a reasonable probability that the evidence would have been discovered in the absence of police misconduct and that the government was actively pursuing a substantial alternate line of investigation the time of the constitutional violation. *United States v. Cherry*, 759 F.2d 1196, 1205–06 (5th Cir. 1985). "[T]he alternate means of obtaining the evidence must at least be in existence and, at least to some degree, imminent, if yet unrealized. *United States v. Hernandez*, 670 F.3d 616, 623 (5th Cir. 2012) (internal quotations and citations omitted); *see also United States v. Namer*, 835 F.2d 1084, 1088 (5th Cir. 1988) ("[T]he government would have to offer a theory as to the manner in

which agents would have made their discovery. . . . [The] emphasis is on 'would' not 'might' or 'could.'").[1]

### III. THE COURT GRANTS IN PART AND DENIES IN PART ROSE'S MOTION TO SUPPRESS

The Court finds the *Terry* stop was unconstitutional. However, the Court does not suppress the firearm, but the Court suppresses all other evidence obtained from the search of the vehicle and the search of Rose, the arrest, and the statements made during the stop.

#### A. The Court Finds the Terry *Stop Was Unconstitutional*

The Court determines that the officers executed an unconstitutional *Terry* stop because the officers did not have reasonable suspicion to execute the stop and detain Rose.

The officers relied on the 911 call to provide reasonable suspicion to justify the stop and search of Rose. While the 911 caller did provide a traceable callback number, the 911 caller requested to remain anonymous, and he was not on the scene when the officers arrived. Thus, the Court treats the 911 call as an anonymous tip.

Upon evaluating the relevant factors to determine the reliability of the tip, the Court finds that the anonymous call was not enough to establish reasonable suspicion. First, the officers had no indication that the anonymous tip was reliable nor any corroborating evidence to support the caller's credibility. While the caller used the 911 emergency system, the caller requested to remain anonymous. Furthermore, the tipster did not provide

---

[1] The Court notes that the Fifth Circuit has alluded that the active-pursuit element may not be necessary to implicate the inevitable-discovery rule. *United States v. Jackson*, 596 F.3d 236, 242 (5th Cir. 2010); *United States v. Lamas*, 930 F.2d 1099, 1104 (5th Cir. 1991). While the element may be unnecessary, the Court still addresses both prongs of the exception.

any predictive information to indicate any "inside knowledge" known to the tipster. *See Martinez*, 486 F.3d at 863. The Court finds that the officers had no information to establish the credibility or reliability of the caller in order to support their reasonable suspicion.

Next, the tipster provided some specific details, but the officers were unable to corroborate much of the information. When the officers arrived at the scene, the officers found Rose wearing red pants and white and gold Jordans, like the caller reported, but Rose was wearing a light gray hoodie, rather than a black hoodie. Further, the 911 caller indicated that the suspect was sitting with another man inside a white Crown Vic parked by a trash can. However, Rose was standing alone behind a fenced in dumpster. He was not inside the car or near the car, and the officers did not see another man inside or near the car. Ultimately, the Court finds that the officers could verify some of the details identifying Rose and the car, but the information did not corroborate the reported criminal activity. *See J.L.*, 529 U.S. at 272 (noting that the tip must be reliable in its assertion of illegality, not just its tendency to identify a person).

Finally, when the officers arrived, the information was stale. The officer did not see Rose in the car or with another man. Further, the officers did not see any indications of an ongoing or recent robbery.

Without more, the Court finds that the anonymous tip was not enough to establish reasonable suspicion. Thus, the Court finds that the *Terry* stop was unconstitutional.

### B. The Court Does Not Suppress the Firearm

While the officers executed an unconstitutional *Terry* stop, the Court determines that the firearm should not be suppressed.

MEMORANDUM OPINION AND ORDER – PAGE 7

***1. The Court Finds Rose Does Not Have Standing.*** – The Court determines that Rose does not have standing to contest the search and seizure of the firearm. The police discovered the firearm in a plastic bag behind a dumpster in a public parking lot. Rose was not holding the bag or the firearm when the police found the bag containing the firearm. The Court finds that Rose did not assert any expectation of privacy over the firearm or the bag, and Rose did not provide any evidence that he owned or possessed any interest in the property. Without any expectation of privacy, the Court determines that Rose does not have standing to challenge the admissibility of the firearm.

***2. The Court Finds the Firearm Was Abandoned.*** – Even if Rose had an expectation of privacy over the firearm, the Court finds that Rose abandoned the firearm before the police found it. Rose did not claim any ownership of the gun or the bag. Further, Rose was not standing near the bag when the officers discovered the firearm, and there was no evidence presented that the officers coerced or forced Rose to abandon the bag. The Court holds that Rose voluntarily abandoned the firearm and treats the bag and firearm as abandoned. Thus, the Court finds that Rose had neither a subjective nor an objective privacy interest in the bag or the firearm.

***3. The Court Finds the Firearm Is Admissible Under the Inevitable Discovery Exception.*** – Finally, the Court determines that the police would have inevitably discovered the firearm. Rose argues that the Government cannot show that any alternative means of obtaining the evidence was in existence. Def.'s Resp. Letter 2 [36]. But the Court determines that the firearm is admissible under the inevitable discovery exception.

First, the Court finds that the Government provided evidence of a reasonable probability that the contested evidence would have been discovered. The police arrived on the scene after a 911 caller reported an ongoing, armed robbery. The caller indicated that the suspect had a black gun with a long clip, and the robbery was ongoing near a dumpster in the D & D Discount Liquor parking lot. Regardless of the discovery of Rose behind the dumpster, the Court finds it reasonably probable that the officers would have found the firearm in the bag behind the dumpster, and the officers' discovery of the firearm in the bag behind the dumpster would have been lawful.

Second, the Court determines that the Government sufficiently showed that the police were actively pursuing a substantial, alternative line of investigation the time of the constitutional violation. The officers arrived on the scene in order to investigate a reported armed robbery in the parking lot of D & D Discount Liquor. The officers' investigation of the reported robbery demonstrates an active pursuit of an alternative line of investigation. Thus, the Court determines that the firearm is admissible under the inevitable discovery exception.

### C. The Court Suppresses All Other Evidence Obtained and Statements Made During the *Terry Stop*

Because the stop was unconstitutional, the Court suppresses all other evidence collected and statements made during the stop, including the evidence collected during the search of the vehicle and the search of Rose, the arrest, and the statements made during the stop. Thus, the Court suppresses all evidence discovered during the vehicle search, the arrest, the evidence discovered after the arrest, and all statements made during the stop.

CONCLUSION

Accordingly, the Court grants in part and denies in part Rose's motion. The Court holds that the officers executed an unconstitutional *Terry* stop, but the Court determines the firearm is not subject to suppression. The Court does suppress all evidence collected during the search of the vehicle and the search of Rose, the arrest, and the statements made during the stop.

Signed April 13, 2020.

_____
David C. Godbey
United States District Judge